# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NASHID J. SALAAM, | Civil Action |
| Plaintiff, | No. 21-12191 (CPO) |
| v. | |
| MARTY SMALL, SR., et al., | **OPINION** |
| Defendants. | |

**Appearances:**

Terrell A. Ratliff
Samuel Jackson
Lento Law Group, P.C.
New Jersey
3000 Atrium Way
Suite 200
Mt. Laurel, NJ 08054

   *On behalf of Plaintiff Nashid J. Salaam.*

Tracy Riley
Law Offices of Riley & Riley
Executive Court
2 Eves Drive
Suite 109
Marlton, NJ 08053

   *On behalf of Defendants Marty Small, Sr., City of Atlantic County, and Alexis Waiters.*

**O'HEARN, District Judge.**

## INTRODUCTION

Pending before the Court is a Motion to Dismiss (ECF No. 14) filed by Defendants Marty Small, Sr., City of Atlantic City, and Alexis Waiters, collectively ("Defendants"),[1] arguing that Counts III (*Monell* Claim for Failure to Train and Supervise), IV (Civil Conspiracy to Interfere with Civil Rights), V (Gross Negligence), VI (Negligence), VII (Violation of the New Jersey Worker Freedom From Employer Intimidation Act, N.J.S.A. § 34:19-9 et seq.), and VIII (Common Law Civil Conspiracy) of the Amended Complaint (ECF No. 12) filed by Nashid J. Salaam ("Plaintiff"), should be dismissed for procedural deficiencies and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court heard argument on February 16, 2022, pursuant to Local Rule 78.1.

For the reasons discussed below, the Court will **GRANT** Defendants' Motion.

### I.   PROCEDURAL HISTORY

Because the parties both raise timeliness and procedural issues related to their respective filings, the Court will review the timing of each pleading and response. Plaintiff filed a Complaint on June 6, 2021. (ECF No. 1). With Plaintiff's consent, Defendants requested and received additional time to respond to the Complaint (Stipulation and Order, ECF Nos. 9, 10) and thereafter filed a Motion to Dismiss on July 29, 2021, (ECF No. 11). Twenty-one days later, on August 19, 2021, Plaintiff filed an Amended Complaint (ECF No. 12). In response thereto, twenty-one days later, on September 10, 2021, Defendants filed a Second Motion to Dismiss the Amended

---

[1] It does not appear from the docket that Defendant Marcus King has been served and he has not joined the Motion to Dismiss (ECF No. 14). The Motion is limited to the claims against Defendants Atlantic City, Small, and Waiters, any reference to "Defendants" in this Opinion includes only those Defendants.

Complaint, the Motion the Court now addresses. (ECF No. 14). In their Motion, Defendants seek the dismissal of Counts III (*Monell* Claim for Failure to Train and Supervise), IV (Civil Conspiracy to Interfere with Civil Rights), V (Gross Negligence), VI (Negligence), VII (Violation of the New Jersey Worker Freedom From Employer Intimidation Act, N.J.S.A. § 34:19-9 et seq.), and VIII (Common Law Civil Conspiracy), but agree that Counts I (First Amendment Violations), II (*Monell* Claim for Unconstitutional Custom or Policy), and IX (Violation of the New Jersey Civil Rights Act, N.J.S.A 10:6-2(c)) state a claim. Plaintiff's Brief in Opposition was filed on September 27, 2021, (ECF No. 15), and, finally, Defendants' Reply Brief was filed on October 1, 2021, (ECF No. 16).

## II.   FACTUAL BACKGROUND[2]

Plaintiff is an employee of the Defendant Atlantic City working as a Laborer for the City's Public Works Department. (Am. Compl., ECF No. 12 ¶ 12). On August 7, 2019, Plaintiff suffered a work-related injury requiring him to undergo physical therapy. (Am. Compl., ECF No. 12 ¶¶ 14, 15). Upon completion of physical therapy, and at his maximum medical improvement, Plaintiff's Functional Capacity Examination ("FCE") indicated that he was capable of medium Physical Demand Level, in other words, lifting no more than fifty pounds. (Am. Compl., ECF No. 12 ¶¶ 17, 18). Plaintiff subsequently received notice from Defendant Waiters, the Director of Human Resources for Atlantic City, recommending his termination given his inability to perform his job duties. (Am. Compl., ECF No. 12 ¶¶ 8, 19). Plaintiff elected to undergo a second FCE and received a result of medium plus Physical Demand Level. (Am. Compl., ECF No. 12 ¶¶ 20, 21). Despite

---

[2] Since the Motion comes before the Court under Rule 12(b)(6), the Court accepts the factual allegations in the Amended Complaint as true and will view all facts in the light most favorable to Plaintiff as the non-moving party. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

this increase in functional capacity, Plaintiff was still not permitted to return to work. (Am. Compl., ECF No. 12 ¶¶ 22, 24). This pattern—Plaintiff requesting to return to work and being denied—continued, with Plaintiff's most recent request being denied on August 19, 2021. (Am. Compl., ECF No. 12 ¶ 49).

Plaintiff and Defendant Small have a "contentious history." (Am. Compl., ECF No. 12 ¶ 26). In 2019 and 2020, Defendant Mayor Small, Mayor of Atlantic City, was campaigning for re-election. (Am. Compl., ECF No. 12 ¶ 28). Knowing Plaintiff had a friend who held significant political influence in the area, Defendant Small asked for Plaintiff's help on his campaign efforts in both years. (Am. Compl., ECF No. 12 ¶¶ 28, 29, 32). Plaintiff refused both requests and alleges that "[t]hese refusals put Plaintiff on [Defendant] Small's list of disfavored individuals." (Am. Compl., ECF No. 12 ¶¶ 33, 34).

The relationship between the two was further strained in the Summer of 2020 when Plaintiff was observed in public with Defendant Small's political challenger. (Am. Compl., ECF No. 12 ¶ 35, 37). Plaintiff was providing security services for the challenger while she went door-to-door canvassing. (Am. Compl., ECF No. 12 ¶ 36). Another Atlantic City employee reported Plaintiff's activity to Defendant Small. (Am. Compl., ECF No. 12 ¶ 37).

As a result of Plaintiff's lack of political support for him, Defendant Small issued a "discrete mandate to high level Human Resources employees, including Defendant Alexis Waiters [Head of Human Resources for Atlantic City], to 'Keep him out,'" and was "directly responsible for keeping Plaintiff from being permitted to return to work." (Am. Compl., ECF No. 12 ¶¶ 37, 41). This practice of politically motivated retaliation was allegedly known among Atlantic City employees and affected many people beyond just Plaintiff. (Am. Compl., ECF No. 12 ¶ 60).

### III.  **LEGAL STANDARD**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); then citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps:  (1) take note of the elements a plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of well-pleaded factual allegations, and then determine whether they plausibly give rise to an entitlement for relief. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)) (alterations, quotations, and other citations omitted).

A district court, in deciding a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil

actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

## IV. DISCUSSION

For the following reasons, the Court will **GRANT** Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) for Failure to State a Claim. Counts IV (Civil Conspiracy to Interfere with Civil Rights), V (Gross Negligence), VI (Negligence), and VII (Violation of the New Jersey Worker Freedom From Employer Intimidation Act, N.J.S.A. § 34:19-10) will be dismissed with prejudice since amendment would be futile. The remaining Counts, III (*Monell* Claim for Failure to Train and Supervise), VII (Violation of the New Jersey Worker Freedom From Employer Intimidation Act, N.J.S.A. § 34:19-12), and VIII (Common Law Civil Conspiracy), will be dismissed without prejudice.

### A. Timeliness of Submissions

Both parties have made untimely filings in this matter, namely, Defendants' Motion to Dismiss (ECF No. 14) and Plaintiff's brief in opposition (ECF No. 15). Both parties ask the Court to disregard the others' late submission.

Regarding the Motion (ECF No. 14), Federal Rule of Civil Procedure 15, details the time to respond to an amended pleading as "within the time remaining to respond to the original pleadings or within 14 days after service of the amended pleading, whichever is later." Defendants concede that their Motion was late when filed on September 10, 2021, twenty-one days after Plaintiff's Amended Complaint was filed and they did not seek formal leave to file a late response,

6

by stipulation or otherwise. Initially, Defendants initially argued that Plaintiff's Amended Complaint was filed late, thus absolving Defendants' error in filing a late responsive motion. This argument holds no merit since Plaintiff's Amended Complaint was indeed timely. In their reply brief, Defendants withdrew their argument in that regard and acknowledged that Plaintiff's Amended Complaint was timely.

Regarding Plaintiff's Brief in Opposition (ECF No. 15), Local Civil Rule 7.1(d)(7) allows the Court to "reject any brief or other paper not filed within the time specified." *See Young v. United States*, 152 F. Supp. 3d 337, 353 (D.N.J. 2015) (collecting examples of papers submitted out of time being rejected under L. Civ. R. 7.1(d)(7)).

The Court, while reminding the parties that they are obligated to comply with the time frames set forth in the Federal and Local rules and seek leave of Court when extensions become necessary, will review the Motion and accept the late filings because the Court finds that there is no prejudice to either party in doing so as both delays were less than ten days and the Motion is fully briefed. *C.f. Espinal v. W. Asset Mgmt., Inc.*, Civ. No. 11-5799, 2011 WL 6002887, at *1 (D.N.J. Nov. 29, 2011) (rejecting a brief filed fourteen days after the deadline); *Rodriguez v. Hayman*, Civ. No. 08-4239, 2009 WL 4122251, at *4 (D.N.J. Nov. 23, 2009) (rejecting a brief filed seventy-nine days after deadline). Further, the Court also notes that Defendants have offered an explanation for their delayed filing. *See Young*, 152 F. Supp. 3d at 354 n.13 ("[A]n explanation from counsel would weigh in favor of considering the untimely papers."). And finally, had either party properly requested an extension on their respective filings, the Court would have likely granted that request.

For these reasons the Court will consider all the papers. Having addressed both parties' procedural concerns, the Court turns now to the merits of Defendants' Motion.

### B. Plaintiff's Factual Allegations Do Not Sufficiently Allege A *Monell* Claim For Failure To Train And Supervise (Count III).

Plaintiff alleges that the deprivation of his constitutional rights—specifically his First Amendment right to free speech manifested in his political expression as well as his right to freely assemble with other individuals who hold his same political views—was and continues to be violated by Defendants' refusal to allow him to return to work. (Am. Compl., ECF No. 12 ¶¶ 55, 57). He contends that this is a direct result of Defendant Atlantic City's failure to train its employees to properly handle foreseeable directives from corrupt politicians asking City employees to violate the law on the politician's behalf. (Pla. Br. in Opp. ECF No. 15 at 4–6).

"[A] municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Plaintiffs must show (1) that defendants' failure to train or supervise employees amounted to "'deliberate indifference' to the rights of persons with whom those employees will come into contact," *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *Canton*, 489 U.S. at 388), and (2) a causal link: "[T]he identified deficiency in [defendants'] training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391; *see also Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). Plaintiff has not pled a sufficient factual basis for either.

#### 1. Deliberate Indifference

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 410 (1997). To rise to the level of deliberate indifference, a plaintiff must show: "(1) municipal policymakers know that employees will confront a particular

8

situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter*, 181 F.3d at 357.

The focus of a failure to train claim must be "on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390–91. Rather, to sustain a failure to train claim, a plaintiff's factual allegations must set forth a "pattern of similar constitutional violations by untrained employees," because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Berg v. City of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Knowledge can be inferred in a situation where the risk of a deprivation of rights is "so obvious, and the inadequacy [is] so likely to result in the violation of constitutional rights." *Canton*, 489 U.S. at 389.

Plaintiff has not sufficiently pled the first requirement of a showing of deliberate indifference, that "municipal policymakers know that employees will confront a particular situation." *Carter*, 181 F.3d at 357. In his brief, Plaintiff argues that "[i]t is no secret that politicians may be tempted to abuse their power for political gain, so Defendants cannot credibly claim that they had no idea their employees might confront this particular situation." (Pla. Br. in Opp. ECF No. 15 at 4). However, even assuming that policy makers should have anticipated that a corrupt politician might give unlawful directives to employees, Plaintiff fails to address the critical component of this element—that a failure to train employees will lead to the employees making

9

wrong decisions. *See id.* When the proper, natural, or expected response would not lead to a constitutional violation, then there is not likely deliberate indifference. *Walker v. City of N.Y.*, 974 F.2d 293, 299 (2d Cir. 1992) ("[T]o follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent—is obvious to all without training or supervision.").

Just as we can expect witnesses who take the stand in court to uphold their oath, not commit perjury, and not incriminate innocent people, it is reasonable to expect that an individual would decline to carry out a discriminatory hiring action or illegally retaliate against another employee at their superior's direction. *Id.*; *see Kline ex rel. Arndt v. Mansfield*, 255 Fed. Appx. 624, 630 (3d Cir. 2007) (holding that failure of school to train its employees to spot signs of sexual abuse was not deliberate indifference "because not committing the crime of sexually abusing a child is obvious") (following *Walker*, 974 F.2d at 299–300); *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 361 (W.D. Pa. 2011) ("The content of a municipal defendant's training program is of little relevance in a case involving a . . . willful violation of known legal restrictions."). That an employee would follow an unlawful or discriminatory directive is far from obvious and does not present a likelihood of unlawful behavior that would put policymakers on notice that there was a risk of the deprivation of constitutional rights.

Despite the fact that it is not plainly obvious that Atlantic City's failure to train its employees would lead to discrimination and suppression of First Amendment rights, Plaintiff may still state a claim if he sufficiently pleads "policymakers were aware of a pattern of [deprivations of constitutional rights] . . . but failed to institute appropriate training or supervision." *Walker*, 974 F.2d at 300.

Plaintiff's Amended Complaint alleges a pattern of abuse, stating "[t]he Defendants have engaged in an ongoing pattern of constitutional violations against the Plaintiff and other similarly

situated employees, for several years and extending to the present day." (ECF No. 13 ¶ 47). He cites Defendant Atlantic City's repeated denials of his requests for reinstatement as the pattern of abuse. (Am. Compl., ECF No. 13 ¶ 68). Plaintiff further alleges, in conclusory fashion, that he is not the only person who has suffered violations, that he knows of "several other City employees" who's constitutional rights were violated as well and, "upon request, Plaintiff will provide affidavits from other similarly situated individuals who have suffered from Defendants' failure to adequately train their employees." (Am. Compl., ECF No. 13 ¶¶ 69, 70). Faced with a motion to dismiss, it is Plaintiff's obligation to properly plead all factual allegations to state a claim and he simply has not done so. He makes nothing more than factually unsupported and conclusory allegations.

Further, Plaintiff has failed to allege any factual basis to show that these violations were ever brought to the Defendant Atlantic City's attention. He even emphasizes in his Amended Complaint that "[employees] may choose to participate in unlawful acts at the direction of the [Defendant Small] or disregard those unlawful directives and *report through the proper channels*." (ECF No. 13 ¶ 98 (emphasis added)). Yet there are no factual allegations that Defendant Atlantic City ever received a report or indication that anything unlawful was occurring—not from an employee who did not wish to agree to Defendant Small's corrupt requests nor from an employee who was harmed by the alleged pattern of abuse. Without any factual allegations that the Defendant Atlantic City was aware of the violations, it could not have been deliberately indifferent to them as a matter of law.

### 2. Causal Link

Further, even assuming Plaintiff had pled facts sufficient to construe willful indifference, his claim nevertheless fails because he has not sufficiently pled that the deprivation of his rights

necessarily stemmed from the acts of untrained employees. Plaintiff's Amended Complaint pleads in conclusory fashion that "[t]his pattern [of constitutional violations] is a direct result of the Defendants' failure to train their employees not to commit such violations." (ECF No. 12 ¶ 69). But "[s]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. *Twombly*, 550 U.S. at 545. There are simply no facts to support the allegation that Plaintiff's situation could have been avoided if the Atlantic City employees were properly trained.

To the contrary, Plaintiff makes extensive factual allegations that Defendant Small's personal vendetta against Plaintiff was the actual cause of the alleged deprivation of constitutional rights, rather than any failure to train. Plaintiff's Amended Complaint alleges that "[t]he City's refusal, thus far, to allow Plaintiff to return to work, . . . is entirely politically motivated, and the direct result of interference by Defendant Marty Small, Sr.," that "Defendant [Small] has done everything in his power as Mayor to keep Plaintiff from getting his job back," and that "Mayor Small is directly responsible for keeping Plaintiff from being permitted to return to work." (Am. Compl., ECF No. 12, ¶¶ 25, 38, 40). There are no facts in the Amended Complaint to suggest that Plaintiff's deprivation of rights was a result of any lack of training as opposed to the Defendant Small's individual actions, and therefore Plaintiff has failed to sufficiently plead causation.

Finally, Plaintiff has not cited any case where a *Monell* claim was brought on facts similar to these, nor has the Court's own research yielded any such case. This is simply not the type of case in which a *Monell* claim is cognizable. For all these reasons, Count III of the Amended Complaint fails to state a *Monell* claim and should be dismissed.

### D. Plaintiff Fails To State A Claim For Civil Conspiracy To Interfere With Civil Rights Under § 1985(3) (Count IV) As A Matter Of Law.

Plaintiff asserts a claim under § 1985(3) alleging a civil conspiracy to prohibit his reinstatement and discriminate against him based on his political affiliations. However, § 1985(3) does not allow for such a claim.

The Supreme Court of the United States, beginning with *Griffin v. Breckenridge*, 403 U.S. 88 (1971), clarified the elements required to state a claim under § 1985(3): "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983) (citing *Griffin*, 403 U.S. at 102–03). The foundation of these claims is that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 102.

Interpreting *Griffin*, the Third Circuit has held that "§ 1985(3) does not provide a cause of action for individuals allegedly injured by conspiracies motivated by discriminatory animus directed toward their political affiliation." *Farber v. City of Paterson*, 440 F.3d 131, 142 (3d Cir. 2006) (citations omitted); *Deblasio v. Zoning Bd. of Adjustment,* 820 F. Supp. 876, 885 (D.N.J. 1993), *affirmed in relevant part*, 53 F.3d 592, 602 (3d Cir. 1995); *Pierce v. Montgomery City Opportunity Bd.*, 884 F. Supp. 965, 978 (E.D. Pa. 1995). It reasoned that

> Allowing § 1985(3) to reach politically motivated conspiracies would involve the federal courts in policing the political arena in ways that the drafters of § 1985(3) could not have intended. . . . . [It] would effectively outlaw all terminations based on political affiliation. . . . [and] would go far toward making the federal courts, by

13

>  virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume.

*Id.* at 142-43 (internal quotations and citations omitted).

Plaintiff has not presented any caselaw or exception that would dictate a different result in this case. Thus, Plaintiff fails to state a claim under § 1985 and, since amendment would be futile, this claim will be dismissed with prejudice.

### E. Plaintiff's State Law Claims

Plaintiff asserts five state law claims: Gross Negligence as to all Defendants (Count V); Negligence as to all Defendants (Count VI); Violation of New Jersey Worker Freedom From Employer Intimidation Act, N.J.S.A. § 34:19–9 et seq., as to Defendants Atlantic City and Small (Count VII); Common Law Civil Conspiracy as to Defendants Small and Waiters (Count VIII); and Violation of New Jersey Civil Rights Act, N.J.S.A 10:6–2(c), as to Defendants Small and Waiters (Count IX). Defendants agree that Plaintiff has stated a claim as the Violation of New Jersey Civil Rights Act (Count IX), but move to dismiss the other four state law claims. For the following reasons, the Court finds that Plaintiff has failed to state a claim for each of the remaining four claims.

#### 1. Plaintiff's Negligence (Count VI) and Gross Negligence (Count V) Claims Are Barred As A Matter Of Law.

Plaintiff alleges that Defendants had a duty to refrain from making employment decisions based on political views or political expression and they breached that duty when they took politically motivated employment actions against him by denying his request to return to work. (Am. Compl., ECF No. 12 ¶¶ 82–84). Claims for negligence against an employer are barred as a matter of law by the Workers' Compensation Act, N.J.S.A. § 34:15-8 ("WCA"). *Van Dunk v. Reckson Assocs. Realty Corp.*, 210 N.J. 449, 451 (2012); *see e.g. Hamza v. United Cont'l Holdings,*

14

*LLC*, No. 19-8971, 2020 WL 5757807, at *4 (D.N.J. Sept. 28, 2020) ("In other words, the Workers' Compensation Act bars an action in negligence brought by an employee against an employer."). Since Plaintiff has not alleged that his claims fit into an exception to the WCA, they will be dismissed with prejudice. *See Eckert v. U.S. Foods, Prologis, L.P.*, No. 20-18177, 2021 WL 1040501, at *2 (D.N.J. Mar. 18, 2021) (citing N.J.S.A. § 34:15-8).

> **2. Plaintiff's Factual Allegations Do Not Sufficiently Allege A Violation Of New Jersey Worker Freedom From Employer Intimidation Act, N.J.S.A. § 34:19-9 et seq., As To Defendants Atlantic City And Small (Count VII).**

Plaintiff asserts that Defendant Atlantic City and Defendant Small's continued adverse employment actions violate New Jersey Worker Freedom From Employer Intimidation Act, N.J.S.A. § 34:19-9 et seq. ("the Act"). (ECF No. 12 ¶ 104–06). This Court disagrees, finding that Plaintiff has failed to state a claim under the Act.

As a preliminary note, there are no cases of which the Court is aware that apply or interpret the Act. Thus, the Court first looks to the text of the Act. "[I]n the interpretation of a statute[, the] overriding goal has consistently been to determine the Legislature's intent." *Young v. Schering Corp.*, 141 N.J. 16, 25 (1995) (quoting *Roig v. Kelsey*, 135 N.J. 500, 515 (1994)). "To determine the Legislature's intent, [courts] look to the statute's language and give those terms their plain and ordinary meaning, because the best indicator of that intent is the plain language chosen by the Legislature." *In re Civ. Commitment of W.W.*, 245 N.J. 438, 448 (2021) (internal quotations and citations omitted). Courts may look to dictionary definitions to ascertain a word's plain or ordinary meaning. *Id.* at 453-53. "If the language is clear, the court's job is complete." *In re Expungement Application of D.J.B.*, 216 N.J. 433, 440 (2014).

The Act provides a remedy for one of two situations. The first is when an employer "require[s] its employees to attend an employer-sponsored meeting or participate in any communications with the employer or its agents or representatives, the purpose of which is to communicate the employer's opinion about religious or political matters." N.J.S.A. § 34:19-10. The second is when an employer retaliates against an employee who "makes a good faith report, verbally or in writing, of a violation or suspected violation of this [A]ct." N.J.S.A. § 34:19-12. The time limitations set forth in this statute make clear that "[a]ny aggrieved employee may enforce the provisions of this act . . . by means of a civil action brought no later than ninety days after the date of the alleged violation." N.J.S.A. § 34:19-13.

Here, the Court finds that Plaintiff has failed to state a claim under the first situation contemplated under the Act: an "employer-sponsored meeting" or communication. Plaintiff's Amended Complaint alleges that "in 2019 and 2020, [Defendant] Small required Plaintiff to assist him with his reelection campaign." (ECF No. 12 ¶ 101). Whether this conduct falls under the purview of the Act appears to be a case of first impression. Since the New Jersey Legislature did not supply its own definition for the phrase "employer-sponsored" in the Act, the Court will interpret the language according to its generally accepted meaning. *See In re Plan for the Abolition of the Council on Affordable Hous.*, 214 N.J. 444, 467 (2013). The Merriam-Webster Dictionary defines "sponsor" as "one who assumes responsibility for some other person or thing" or "a person or an organization that pays for or plans and carries out a project or activity." *The Merriam–Webster Dictionary, Sponsor*, https://www.merriam-webster.com/dictionary/sponsor (last visited Feb. 24, 2022). Thus, the meeting or communication prohibited in N.J.S.A. § 34:19-10 must be conducted under the responsibility of the employer, or at their direction. This interpretation is supported by the use of the phrase in other instances.

For example, the New Jersey Supreme Court has discussed employer-sponsored activities in the Worker's Compensation context. In *Lozano v. Frank DeLuca Construction*, the New Jersey Supreme Court considered whether an employer-compelled event could fall under the "recreational or social activities" phrase as used in the Workers' Compensation Act ("WCA"). 178 N.J. 513, 517 (2004) In dicta, it addresses the distinction between recreational or social activities that are employer-compelled as opposed to employer-sponsored. *Id.* at 528. It discussed employer-sponsored activities as those with a "degree of employer support" "in which the employee voluntarily engaged." *Id.*

Here, the Court finds that the nature of Defendant Small's conduct does not fall within the scope of the Act. Specifically, it does not constitute an "employer-sponsored meeting" or communication. Plaintiff has also failed to show that the opinion being communicated is that of the employer. *See* N.J.S.A. § 34:19-10. To the contrary, the purpose of Defendant Small's conduct was to communicate his own personal political opinion in the context of his re-election campaign, not the opinion of Atlantic City. The dissemination of a superior's political opinion, particularly an elected official in the context of a re-election campaign, simply is not the type of conduct that this statute was created to prevent. *See* N.J.S.A. § 34:19-10 ("the purpose of which is to communicate *the employer's opinion* about religious or political matters." (emphasis added)).

Even if Plaintiff had properly pled an employer-sponsored meeting or communication conducted with the purpose to communicate Atlantic City's opinions, his claim would be time-barred. Plaintiff's Amended Complaint alleges that Defendant Small requested Plaintiff's help with campaigning efforts in 2019 and 2020, (ECF No. 12 ¶ 28), much more than ninety days before this Complaint was filed on June 7, 2021, (ECF No. 1); *see* N.J.S.A. § 34:19-13.

Finally, Plaintiff has also failed to state a claim under the second situation contemplated under the Act: retaliation. Plaintiff's Amended Complaint alleges that the most recent of Defendant Atlantic City's adverse employment actions against Plaintiff occurred on August 19, 2021, when it again refused his request to return to work. (ECF No. 12 ¶ 104–06). The Amended Complaint, however, is void of factual allegations for a key element of this claim: that Plaintiff reported the violation of the Act. *See* N.J.S.A. § 34:19-12. Even if the Amended Complaint contained factual allegations that Plaintiff had in fact reported prohibited conduct, it further fails to allege that his complaints caused the adverse employment actions of which he now complains.

For all of these reasons, Count VII fails to state a claim under the Act. To the extent Plaintiff brings a claim under N.J.S.A. § 34:19-10, it will be dismissed with prejudice. To the extent he brings a claim under N.J.S.A. § 34:19-12, it will be dismissed without prejudice.

### 3. Plaintiff's Factual Allegations Do Not Sufficiently Allege A Common Law Civil Conspiracy As To Defendants Small And Waiters (Count VIII).

Plaintiff contends that Defendants Small and Waiters engaged in a civil conspiracy to prohibit Plaintiff's return to employment as a direct result of his political expression and refusal to join in Defendant Small's re-election efforts. Because Plaintiff's Amended Complaint is void of any allegation that Defendant Waiters was aware of, agreed with, or intended to further this conspiracy, this Court finds that Plaintiff has failed to sufficiently plead a claim for civil conspiracy.

The three elements of civil conspiracy are: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; and (3) existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 241 (2005) (quoting *Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 268 N.J. Super.

337, 364 (App. Div. 1993), *certif. denied*, 135 N.J. 468 (1994)). A claim for civil conspiracy requires a "meeting of the minds," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970); *see Daruwala v. Merch.*, No. 1310-13T3, 2015 WL 6829646, at *12 (N.J. App. Div. Nov. 9, 2015) (applying the "meeting of the minds" requirement in *Adickes* to a New Jersey civil conspiracy claim), but "[i]t is enough [for liability] if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them," *Banco Popular*, 184 N.J. at 171 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

Plaintiff's Amended Complaint alleges that "Defendant Small issued a discrete mandate to Defendant Waiters that she refuse to permit Plaintiff to return to work," (ECF No. 12 ¶ 111), and that "[Defendant] Waiters acted in furtherance of the conspiracy . . . by complying with Defendant Small's mandate, and refusing to allow Plaintiff to return to work," (ECF No. 12 ¶ 112). Plaintiff has not pled any facts to show that Defendant Waiters understood, accepted, or agreed with the objective behind the directive not to reinstate Plaintiff. Without any indication that Defendant Waiters did anything but follow directions, this Court cannot find it even plausible that there was a "meeting of the minds" and therefore Plaintiff has not sufficiently pled a claim for common law conspiracy.

V.     **CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) for Failure to State a Claim. Counts IV (Civil Conspiracy to Interfere with Civil Rights), V (Gross Negligence), VI (Negligence), and VII (Violation of the New Jersey Worker Freedom From Employer Intimidation Act, N.J.S.A. § 34:19-10) will be dismissed with prejudice and the remaining counts, III (*Monell* Claim for Failure to Train and Supervise), VII (Violation of the New Jersey Worker Freedom From Employer Intimidation Act, N.J.S.A. § 34:19-12), and VIII

19

(Common Law Civil Conspiracy), will be dismissed without prejudice. Plaintiff will be granted leave to file a second amended Complaint within thirty days. An appropriate Order will be entered.

Date: February 25, 2022

                                                               /s/ *Christine P. O'Hearn*
                                                               **Christine P. O'Hearn**
                                                               **United States District Judge**